# EXHIBIT A

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

STATE OF MICHIGAN
IN THE OAKLAND COUNTY CIRCUIT COURT

DAVID BILLY
RHONDIA BILLY
          **Plaintiffs**

2012-128248-CH
JUDGE LEO BOWMAN

V

Case No:          C H
Hon:

ORLANS ASSOCIATES, PC
A Michigan a Domestic Professional
Services Corporation
WASHINGTON MUTUAL BANK, FA
JP MORGAN CHASE BANK, FA
DEUTSCHE NATIONAL TRUST CO
MSC WAMU MORTGAGE PASS THROUGH
CERT

_____/

THE MORAN LAW FIRM
VALERIE A. MORAN (P 56498)
Attorney for Plaintiffs
115 N. Center Street  Suite 203
Northville, MI  48167
248-465-9400

_____/

This case has been designated as an
eFiling case, visit
www.oakgov.com/clerkrod/efiling to
review a copy of the Notice of
Mandatory eFiling

There was a prior 47th District court action, Case No: 11-H2226LT arising out of
some of the transaction or occurrence alleged in the complaint which was
previously dismissed without prejudice.

Valerie A. Moran

## VERIFIED COMPLAINT FOR QUIET TITLE AND OTHER RELIEF

Plaintiffs, DAVID BILLY, and RHONDIA BILLY, by and through their

attorney, VALERIE A. MORAN of THE MORAN LAW FIRM complain against

Defendants as follows:

1

1. This is a multi-count action, seeking: injunctive relief, equitable relief, violations of the Michigan Recording Statutes, Defendant's fraudulent misrepresentations, as well as, damages from Defendant's failure to adhere to the specific and clear statutory and common law requirements when foreclosing on property owned by these Plaintiffs.

2. Plaintiffs seek to have the sheriff sale declared "void ab initio" due to <u>the fact that statutory violations</u> occurred during the foreclosure by advertisement process, including a lack of complete "record chain of title" as required by MCL 600.3204 et seq as well as a <u>failure to serve Plaintiff's as required by statute</u> during the foreclosure process and for <u>violations pursuant to MCL 600.3205 et seq.</u>

3. Upon information and belief, DEFENDANTS ARE AWARE OF THE STATUTORY VIOLATIONS THAT RENDER THE FORECLOSURE INVALID AND TITLE UNMARKETABLE, BUT HAVE FAILED TO EXPONGE OR OTHERWISE REMOVE THE SHERIFF DEED FROM TITLE, THUS CONTINUING TO CLOUD AND SLANDER PLAINTIFF'S TITLE.

4. Further, due to the <u>misleading and fraudulent misrepresentations and omissions made by Defendants to Plaintiffs in Affidavits, pleadings, and documents in the chain of title, the prerequisites for a foreclosure by advertisement under MCL 600.3204et seq were not met.</u>

5. <u>Plaintiff's further seek relief due to fraudulent misrepresentations made by Defendants directly to Plaintiffs and relied upon by Plaintiffs.</u>

6. <u>Upon information and belief, the Board of Governors of the Federal Reserve System and the Office of the Comptroller of the Currency have required an "Independent Foreclosure Review."</u>

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

7.  Plaintiff seeks an Order:  1) Declaring the Sheriff Sale void ab initio and reinstate

Plaintiff's mortgage  2) awarding to Plaintiff's all rights title and interest in the real property

and 3) awarding to Plaintiffs all costs and attorney fees as well as all applicable special and

statutory damages for having to file this complaint.

## JURISDICTION AND VENUE

8.  Plaintiffs are DAVID BILLY AND RHONDIA BILLY, husband and wife, and

individuals residing at the property, and rightful owners of the property commonly referred to as:

**30780 Turtle Creek Farmington Hills MI  48331** located in the County of **Oakland**, State of

Michigan.  The real property is described to wit:

> **Lot 64 Ramblewood Number 2, according to the recorded plat thereof as recorded
> in Liber 149, Pages and 26 of Plats, Oakland County Records**
>
> **Parcel ID number: 23-05-151-001**

9. Plaintiffs are the rightful owners of the above property **(Exhibit 1: Deed) and were**

**both listed on the mortgage as mortgagors (Exhibit 2: Mortgage And  Assignment )**

10.     The mortgage on the aforementioned  property was previously held by

Washington Mutual Bank Corporation and was later acquired by JP Morgan Chase through

receivership.

11.     Plaintiff disputes the validity of the foreclosure as, upon information and belief,

Defendants have failed to meet the statutory requirements for a valid foreclosure by

advertisement. (Exhibit 3 Sheriff Deed with attachments)

12.     Plaintiff further disputes the validity of the foreclosure, as upon information and

belief, said recorded documents could not be properly recorded due to forged signatures and/or

3

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

unauthorized signatures and/or improper and/or fraudulent notarizations in violation of Michigan recording statutes, the Michigan Notary Public Act, MCL 55.261 et seq. and in further violation of Michigan Foreclosure by advertisement statutes.

      13.    Defendant, Orlans Associates is a Domestic Professional Services Corporation located at 1650 W. Big Beaver Rd Troy, MI 48084 conducting business as a debt collector and lender designee pursuant to MCL 600.3205et seq in the County of Livingston, State of Michigan.

      14. Defendant JP Morgan Chase, NA is a multinational bank and financial services corporation, doing business in the County of Oakland, State of Michigan.

      15. Defendant Washington Mutual Bank, FA was a Federal association which previously did business in the County of Oakland, State of Michigan.

      16. Defendant Deutsche Bank National Trust Company, upon information and belief, is a national company doing business and acting as Trustee for Defendant Washington Mutual Bank FA for WAMU Mortgage Pass Through Certificates.

      17. The Circuit Court has jurisdiction over this matter as the amount in controversy exceeds $25,000 exclusive of costs and attorney fees, and as Plaintiff seeks specific performance ,and equitable relief. Thus jurisdiction is proper in this Honorable Circuit Court.

## FACTUAL BACKGROUND

      18.    Plaintiffs, entered into a mortgage contract on the aforementioned property.

The signed note, upon information and belief is in the possession of Defendants and was not provided to Plaintiffs at the closing.

4

19. Plaintiffs, due to the economic downturn in the State of Michigan, suffered an economic hardship and sought assistance from their lender. Plaintiff's sent in multiple packages seeking a loan modification but Defendants failed and/or refused to process said packages and proceeded to foreclosure.

20. Said foreclosure was not conducted in compliance with Michigan Foreclosure by Advertisement Statutes, specifically including by not limited to:

    A. Defendants failed to have a record chain of title in violation of MCL 600.3204et et seq

    B. Defendants failed to comply with MCL 600.3205 et seq

21. Defendant Orlans, upon information and belief acting on behalf of and/or under the direction of the other Defendants, despite being on notice that Plaintiff's wanted to keep their property, and despite being on notice of their failure to meet statutory requirements, proceeded with said foreclosure and Sheriff Sale, never complied with the aforementioned statutory requirements and never corrected the title.

22. Upon information and belief, Defendant Orlans **knew of the deficiencies in title and in the foreclosure process, but failed to correct the chain of title, thus slandering and continuing to slander title to Plaintiff's property..**

23. That the Sheriff Sale was not completed in compliance with Michigan Law and thus the Sheriff Deed must be removed or expunged from the Chain of Title.

24. That Defendants, if allowed to proceed with an eviction which upon information and belief, arise from defective Sheriff Sale, will cause Plaintiffs to suffer irreparable harm in that

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

5

they will be evicted from their home and, other real property. As these are real properties, there is no adequate remedy at law.

## COUNT -1 QUIET TITLE

25.     Plaintiffs hereby incorporate paragraphs 1-24 as though full set forth herein.

26.     That the actions of the Defendants were intentionally designed to take Plaintiff's home.

27.     That Defendants knew, or should have known that Plaintiffs were attempting to keep ownership and possession of their home.

28.     Plaintiffs their rights pursuant to Michigan statute MCL 600.3205 et seq., and MCL 600.3204 et seq

29.     That in direct contradiction to their knowledge and statutory duties, Defendants did misrepresent their right to foreclose via advisertisment on the aforementioned property.

30.     That Defendants knew or should have known that recorded documents with the Register of Deeds were fraudulent and/or forged and/or contained improper notarizations and/or failed to represent a record chain of title as required by statute and/or contained other deficiencies and thus, adversely affected Plaintiff's rights in the property.

47.     That Defendants knew or should have known that the prerequisites of MCL 600.3204 which requires a record chain of title had not been met as upon information and belief, Defendants completed a review of the chain of title.

48.     Defendants proceeded with the foreclosure and dispossessed Plaintiff's of their property.

6

49.    Defendants failed to correct the deficient chain of title and failed to restore Plaintiff's rights title and interest in the property despite having knowledge of the fatal flaws in the foreclosure and the lack of the required record chain of title.

WHEREFORE, plaintiffs pray for the entry of judgment:

A.    Order Sheriff's sales to be declared void ab initio, and Grant Plaintiffs all legal title to the subject property described above.

B.    Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein, including all special damages pursuant to any statute found to be applicable in the course of this action.

C.    Awarding Plaintiffs costs and attorney fees herein.

D.    Awarding any other relief that this court deems just and equitable, with cost and fees awarded to Plaintiffs so wrongfully incurred.

## COUNT – II- COMMON LAW SLANDER OF TITLE

50.    Plaintiffs hereby incorporate paragraphs 1-49 as though full set forth herein

51.    Defendants, or agents acting on their behalf and under their direction, upon information and belief, committed common law Slander of Title by knowingly and intentionally publishing false statements in regard to Plaintiff's property, by proceeding with the foreclosure despite having a chain of title as required by Michigan statute MCL 600.3204 et seq.

52.    Defendants, or agents acting on their behalf and under their direction, upon information and belief, further slandered Plaintiff's title by improperly recording documents in the chain of

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

7

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

title that contained forged signatures, unauthorized signatures, improper notarizations and by failing to comply with Michigan Foreclosure by advertisement statutes .

53. Defendants, or agents acting on their behalf and under their direction, upon information and belief, further committed common law Slander of Title and caused additional damages by seeking to evict Plaintiffs from their property and by failing to correct documents that were in the chain of title due to Defendants acts that were in violation of Michigan foreclosure by advertisement statutes.

54. Defendants, or agents acting on their behalf and under their direction, committed the aforementioned acts with malice as Defendants had <u>knowledge of their own noncompliance, but proceeded anyway with the goal and intent was to dispossess Plaintiffs of their properties</u> and thus causing injury and damages to the Plaintiffs.

55. Defendants, or agents acting on their behalf and under their direction, committed the aforementioned acts with malice as Defendants had <u>knowledge of their own noncompliance, but proceeded anyway with the goal and intent was to dispossess Plaintiffs of their property</u> and thus causing injury and damages to the Plaintiffs.

56. Defendants further slandered the title to Plaintiffs property by failing to correct the documents slandering Plaintiff's title, which upon information and belief are known to Defendants.

57. Defendants caused special damages to: 1) the marketability of Plaintiff's title 2) Plaintiff's credit and credit rating 3) the use and enjoyment of Plaintiff's property and 4) all other applicable special stator damages and other damages allowed by statute.

WHEREFORE, plaintiffs pray for the entry of judgment:

8

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

A.      Order Sheriff's sales to be declared void ab initio, including an order that all improper documents be struck from the chain of title and declared void and Grant Plaintiffs all legal title to the subject property described above

B.      Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein, including all special damages pursuant to any statute found to be applicable in the course of this action.

C.      Awarding Plaintiffs costs and attorney fees herein

D.      Awarding any other relief that this court deems just and equitable, with cost and fees awarded to Plaintiffs so wrongfully incurred.

## COUNT –III- VIOLATION OF MCL 565.108 STATUTORY SLANDER OF TITLE

58.  Plaintiffs hereby incorporate paragraphs 1-57 as though fully set forth herein.

59.      Defendants wrongfully used their privilege to file notices knowing that they had not complied with applicable statutes as required and therefore filed said notices for the purposes of slandering Plaintiff's title in an attempt to proceed with improper foreclosures on the properties.

60.      Defendants, upon information and belief, acted with malice and filed statements with the court and recorded documents in the register of deeds that they knew to be false .

61.      Defendants, upon information and belief, failed to correct the pleadings, notices and recordings despite knowledge of their falsities and statutory inadequacies.

As a result of Defendants acts, Plaintiffs have been damaged as set forth herein in this complaint.

WHEREFORE, plaintiffs pray for the entry of judgment:

9

A.     Order Sheriff's sales to be declared void ab initio, and Grant Plaintiffs all legal title to the subject property described above

B.     Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein, including all special damages pursuant to any statute found to be applicable in the course of this action.

C.     Awarding Plaintiffs costs and attorney fees herein

D.     Awarding any other relief that this court deems just and equitable, with cost and fees awarded to Plaintiffs so wrongfully incurred.

## COUNT – IV- INNOCENT/NEGLIGENT MISREPSRESENTATION

62.    Plaintiffs hereby incorporate paragraphs 1-61 as though fully set forth herein

63.    Defendants made innocent and/or negligent misrepresentations of material facts by representing that the foreclosure had been completed properly and in compliance with all statutes.

64.    That in direct contradiction to their knowledge and statutory duties, Defendants did undertake to schedule a Sheriff Sale of the subject property and wrongfully denied Plaintiffs their rights to the property.

65.    That Defendants withheld information of the statutory deficiencies and questionable signatures thus creating a false impression to Plaintiff that the property had completed a proper foreclosure in accordance with all foreclosure by advertisement statutes such that it could be properly further conveyed.

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

10

66.     That the representations made by the Defendants were directed to Plaintiffs and their representatives and were made ostensibly so that Plaintiffs could remain in their home.

67.     That the representations were false when they were made, and that Defendants knew or should have known they were false.

WHEREFORE, plaintiffs pray for the entry of judgment:

A.      Order Sheriff's sales to be declared void ab initio, and Grant Plaintiffs all legal title to the subject property described above

B.      Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein, including all special damages pursuant to any statute found to be applicable in the course of this action.

C.      Awarding Plaintiffs costs and attorney fees herein

D.      Awarding any other relief that this court deems just and equitable, with cost and fees awarded to Plaintiffs so wrongfully incurred.

## COUNT – V- FRAUD BASED UPON INTENTIONAL MISREPESENTATIONS, SILENT FRAUD AND BAD FAITH PROMISES

68.     Plaintiffs hereby incorporate paragraphs 1-67 as though full set forth herein

69.     That Defendants falsely represented the nature and Defendants authority of the foreclosure proceeding to Plaintiffs.

70.     That Defendants falsely represented their authority to record documents in the chain of title to the property and withheld knowledge of the deficiencies and problematic documents and

11

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

lack of documents in the chains of title such that, upon information and belief a "record chain of title" as required pursuant to MCL 600.3204(3) had not been met.

71.      That Defendants made false representations of material .

72.   That Defendants withheld information as to the condition of the chain of title on the property.

73.      Defendants knew their representations were false when they were made as Defendants upon information and belief were in possession of said documents and had audited the documents.

74.      Plaintiffs relied upon Defendants representations, recordings and pleadings.

75.      Defendants failure to disclose facts and/or to disclose facts accurately in public record and to Plaintiffs.

76.      Defendants failure to disclose as indicated above have caused Defendants to have a false impression and Defendants benefited from their misrepresentations and Defendants knew or should have known that their failure to disclose these pertinent facts would create false impression and/or reliance on the part of the Plaintiffs.

77.      Plaintiffs relied upon Defendants false impressions and representations and as a result have been damaged and will be further financially damaged if not granted relief by this Honorable Court.

78.      As a direct and proximate result of Defendants acts, Plaintiffs have suffered significant financial losses, severe emotional distress and are in danger of losing their home.


WHEREFORE, plaintiffs pray for the entry of judgment:

12

A.      Order Sheriff's sales to be declared void ab initio, and Grant Plaintiffs all legal title to the subject property described above

B.      Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions herein, including all special damages pursuant to any statute found to be applicable in the course of this action.

C.      Awarding Plaintiffs costs and attorney fees herein

D.      Awarding any other relief that this court deems just and equitable, with cost and fees awarded to Plaintiffs so wrongfully incurred.

## COUNT -VI – CONCERT OF ACTION

79.     Plaintiff hereby incorporates paragraphs 1-78 as though fully set forth herein.

80.     Defendants acted in concert pursuant to a common design to attempt to illegally interfere and dispossess Plaintiffs of their real property.

81.     Defendants, intentionally or recklessly acted to interfere and dispossess Plaintiffs of their real property and to interfere with Plaintiff's lawful possessory interest.

82.     Defendants knew or should have known that their actions were illegal, contrary to Michigan Statutes, further their acts of misrepresentation as to the nature of the transaction further demonstrate their knowledge of their bad acts.

83.     As a direct and proximate result of Defendants concert of action, Plaintiffs have suffered damages.

WHEREFORE, plaintiffs pray for the entry of judgment:

A.      Order Sheriff's sales to be declared void ab initio, and Grant Plaintiffs all legal title to the subject property described above

13

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

B.      Awarding Plaintiffs all damages incurred by Plaintiffs as a result of Defendants actions

herein, including all special damages pursuant to any statute found to be applicable in the course

of this action.

C.      Awarding Plaintiffs costs and attorney fees herein

D.      Awarding any other relief that this court deems just and equitable, with cost and fees

awarded to Plaintiffs so wrongfully incurred.

E.      An award of monetary damages, exemplary damages, consequential damages as well as

any other damages to Plaintiffs and any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,

By: _____

VALERIE A. MORAN (P 56498)
THE MORAN LAW FIRM
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI  48167

## VERIFICATION OF COMPLAINT

**I, David Billy,** declare that I have carefully read and understand the above Verified Complaint
and declare that the statements above are truthful and accurate to the best of my knowledge,
information and belief.

Sworn under penalty of perjury:

_____
David Billy

## NOTARY:

Signed and sworn to before me in OAKLAND County, Michigan, on MAY 21, 2012.

sig/ _____

/print/ JONATHAN ROUMAYAH _____

Notary public, State of Michigan, County of: Oakland

My commission expires 08-31-2017

JONATHAN ROUMAYAH
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires: Aug. 31, 2017
Acting in the County of Oakland

14

## VERIFICATION OF COMPLAINT

**I, Rhondia Billy,** declare that I have carefully read and understand the above Verified Complaint and declare that the statements above are truthful and accurate to the best of my knowledge, information and belief.

Sworn under penalty of perjury:

_Rhondia E. Billy_

Rhondia Billy

**NOTARY:**

Signed and sworn to before me in ___OAKLAND___ County, Michigan, on ___MAY 21, 2012___.

sig/ _____

/print ___JONATHAN ROUMAYAH___

Notary public, State of Michigan, County of ___Oakland___.

My commission expires ___08-31-2017___.

> JONATHAN ROUMAYAH
> NOTARY PUBLIC - STATE OF MICHIGAN
> COUNTY OF OAKLAND.
> My Commission Expires: Aug. 31, 2017
> Acting in the County of ___OAKLAND___

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

15

STATE OF MICHIGAN
IN THE OAKLAND COUNTY CIRCUIT COURT

DAVID BILLY
RHONDIA BILLY
     **Plaintiffs**

2012-128248-CH
JUDGE LEO BOWMAN

Case No:
Hon:

V

ORLANS ASSOCIATES, PC
A Michigan a Domestic Professional
Services Corporation
WASHINGTON MUTUAL BANK, FA
JP MORGAN CHASE BANK, FA
DEUTSCHE NATIONAL TRUST CO
MSC WAMU MORTGAGE PASS THROUGH
CERT
_____/

THE MORAN LAW FIRM
VALERIE A. MORAN (P 56498)
Attorney for Plaintiffs
115 N. Center Street  Suite 203
Northville, MI  48167
248-465-9400
_____/

_Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48_

## **JURY DEMAND**

Plaintiffs demand a Jury Trial on all issues triable.

Respectfully submitted,

By: _____

VALERIE A. MORAN (P 56498)
THE MORAN LAW FIRM
Attorney for Plaintiff
115 N. Center Street Suite 203
Northville, MI  48167

16

# Exhibit 1

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

11

LIBER19892PG185   145774

LIBER 19892 PAGE 185
$7.00 DEED - COMBINED
$2.00 REMONUMENTATION
$3,741.00 TRANSFER TX COMBINED
04/27/1999 10:36:09 A.M.   RECEIPT# 24322
PAID   RECORDED - OAKLAND COUNTY
G. WILLIAM CADDELL, CLERK/REGISTER OF DEEDS

**WARRANTY DEED**     Great Lakes Title of Michigan

GLT FILE NO. 35-7027
The Grantor(s)  MICHAEL H. WOOD AND FLORENTINA WOOD , h/w

whose address is 4555 CHEROKEE LANE, BLOOMFIELD HILLS  MI 48301-1424

Convey(s) and Warrant(s) to DAVID BILLY, SR.

whose address is  16093 CORAM ST, DETROIT  MI 48205

The following described premises situated in the CITY of FARMINGTON HILLS, County of OAKLAND, STATE of MICHIGAN:

LOT 64,   RAMBLEWOOD SUBDIVISION NO. 2, AS RECORDED IN LIBER 149, PAGES 25 AND 26 OF PLATS, OAKLAND COUNTY RECORDS.

149025

Commonly known as: 30780 TURTLE CREEK

For the sum of FOUR HUNDRED THIRTY-FIVE THOUSAND AND 00/100  ($435,000.00) DOLLARS.

Subject to easements and building and use restrictions of record, if any.

Dated:  March 31, 1999
Signed in the presence of:                                     Signed by:

DOUGLAS L. WEBSTER                                        MICHAEL H. WOOD

M. MESSINA                                                        FLORENTINA WOOD

STATE OF MICHIGAN
COUNTY OF WAYNE

The foregoing instrument was acknowledged before me on  March 31, 1999, by MICHAEL H. WOOD AND FLORENTINA WOOD , HIS WIFE

018                                                    MARGARET M. MESSINA
                                                       Notary Public, WAYNE County, Michigan
                                                       My commission expires: JULY 3, 2001

| County Treasurer's Certificate | | STATE OF MICHIGAN   REAL ESTATE TRANSFER TAX |
|---|---|---|
| 1.00<br>4-8-99 | | 4/27/1999<br>24322   $3,262.50  02<br>29469 |

| When Recorded Return To: | Drafted By: |
|---|---|
| DAVID BILLY, SR. | RON SIMPSON |
|  | Business Address: |
| 16093 CORAM ST | CENTURY 21 ELEGANT HOMES |
|  | 25130 SOUTHFIELD ROAD STE 100 |
| DETROIT MI 48205 | SOUTHFIELD, MI 48075 |

| Tax ID # 23-05-151-001 | Recording Fee 10.00 | State Transfer Tax $3,262.50 |
|---|---|---|
| L-PM | | County Transfer Tax $478.50 |
| | | Total $3,741.00 |

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

LIBER 27197 PAGE 809

4296633
LIBER 27197 PAGE 809
17.00 DEED - COMBINED
17.00 REMONUMENTATION
4.00 TRANSFER TX COMBINED
11/25/2002 01:38:21 P.M. RECEIPT# 6733
PAID   RECORDED - OAKLAND COUNTY
G.WILLIAM CADDELL, CLERK/REGISTER OF DEEDS

11-8-02  **QUIT CLAIM DEED - Statutory Form**

KNOW ALL MEN BY THESE PRESENTS: That  David Billy Sr. , a married man

whose address is    30780 Turtle Creek Farmington Hills, MI  48331
Quit Claim(s) to    David Billy, Sr.    and Rhonda E. Billy
                    husband & wife
whose address is 30780 Turtle Creek Farmington Hills, MI  48331
the following described premises situated in the    City
of  Farmington Hills            County of    Oakland        and State of Michigan, to-wit:

Lot 64, "Ramblewood No. 2", as recorded in Liber 149, Page(s) 25 and 26 of
Plats, Oakland County Records.

Tax Item No.  23-05-151-001                    142025

More commonly known as:  30780 Turtle Creek

for the full consideration of  MCL 207.505(a) MCL 207.526(a)

Subject to:

Dated this  8th  day of  November    , 2002

Witnesses:                              Signatures:

_____                 David Billy Jr.                    (L.S.)
                                        David Billy, Sr.

_____                 _____           (L.S.)

_____                 _____           (L.S.)

_____                 _____           (L.S.)

STATE OF MICHIGAN                       O.K. - AW
COUNTY OF   WAYNE       } ss.

The foregoing instrument was acknowledged before me this   8th  day of  November  , 2002  by
 David Billy Sr. , a married man

        RASHEDA S. WATSON
        Notary Public, Wayne County, MI
        Commission Expires Apr. 26, 2006      _____
                                             Notary Public- Rasheda S. Watson
Drafted By:  Philip R. Seaver (Title)          Wayne    County, Michigan
             30640 West 12 Mile
             Farmington Hills, MI  48334     My commission expires: April 26, 2006

Recording Fee: $ (13.00)    Return to:  David Billy Sr.
                                         30780 Turtle Creek
State Transfer Tax: $                    Farmington Hills, MI  48331

Send subsequent tax bills to:    Same as Above

_____

        PHILIP R. SEAVER TITLE COMPANY, INC.
        A Title Insurance Agency
        42651 Woodward Avenue, Bloomfield Hills, Michigan 48304  (248-338-7135)

27643257                                                    9-

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

# Exhibit 2

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48



**LIBER 33280 PG416**

RECEIVED
MAY 06 2004
G.W. Caddell Register of Deeds
Oakland County, MI

AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

REC
JUN 03 2004
G.W. Caddell Register of Deeds
Oakland County, MI

267593
LIBER 33280 PAGE 416
$70.00 MORTGAGE
$4.00 REMONUMENTATION
06/10/2004 11:36:32 A.M. RECEIPT# 72857
PAID    RECORDED - OAKLAND COUNTY
G.WILLIAM CADDELL, CLERK/REGISTER OF DEEDS

———— [Space Above This Line For Recording Data] ————

STATEWIDE TITLE SW100323

# MORTGAGE

03-2335-067628084-5

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated ____ April 20, 2004 ____ together with all Riders to this document.
(B) "Borrower" is DAVID BILLY SR. AND RHONDIA E BILLY, HUSBAND AND WIFE

_____

_____

Borrower's address is 30780 TURTLE CREEK, FARMINGTON HILLS, MI 48331
_____. Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is    Washington Mutual Bank, FA, a federal association
Lender is a _____ Bank _____ organized and existing under the laws
of United States of America _____. Lender's address is:
    400 East Main Street Stockton, CA 95290
Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated    April 20, 2004 .
The Note states that Borrower owes Lender Four Hundred Sixteen Thousand & 00/100

O.K. - AW

Dollars (U.S. $    416,000.00    ) plus interest. Borrower has promised to pay this debt in
regular Periodic Payments and to pay the debt in full not later than    May 1, 2034 .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

MICHIGAN
73325 (02-011)

Page 1 of 16

TO BE RECORDED

*DB*    *RSB*

SW 100323

LIBER 33280 PG417

03-2335-067628084-5

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] Other(s) [specify]

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider

- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note; and (iii) the performance of all agreements of Borrower to pay fees and charges arising out of the Loan whether or not herein set forth. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's

LIBER 33280 PG418

03-2335-067628084-5

successors and assigns, with power of sale, the following described property located in Oakland County, Michigan:
LOT 64, RAMBLEWOOD NO. 2, ACCORDING TO THE RECORDED PLAT THEREOF AS RECORDED IN LIBER 149, PAGES 25 AND 26 OF PLATS, OAKLAND COUNTY RECORDS

Tax ID 23-05-151-001

149025

which currently has the address of 30780 TURTLE CREEK
[Street]

FARMINGTON HILLS , Michigan 48331 ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one of more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic

MICHIGAN
73225 (02-01) DB Page 3 of 18 TO BE RECORDED

LIBER33280 PG419

03-2335-067628084-5

Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance of the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke

MICHIGAN
73225 (02-01)

Page 4 of 16

TO BE RECORDED

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

LIBER 3 3 2 8 0 PG 4 2 0

03-2335-067628084-5

the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

LIBER33280 PG421

03-2335-067628084-5

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby waives, to the full extent allowed by law, all of Borrower's rights to receive any and all of such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in connection with any damage to such property, resulting from any cause or causes whatsoever,

MICHIGAN
73225 (02-01)

Page 6 of 16

TO BE RECORDED

LIBER33280 PG422

03-2335-067628084-5

including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, or remove or demolish any building thereon, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in good condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property in good and workmanlike manner if damaged to avoid further

MICHIGAN
73225 (02-01)

Page 7 of 15

TO BE RECORDED

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

LIBER 33280 PG423

03-2335-067628084-5

deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient and workmanlike manner in accordance with all applicable laws.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender payable as a result of any damage to or otherwise relating to the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting

MICHIGAN
73225 (02-01)

Page 8 of 16

TO BE RECORDED

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

LIBER 33280 PG424

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

03-2335-067628084-5

and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage

MICHIGAN
73225 (02-01)

TO BE RECORDED

LIBER 33280 PG 425

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

03-2335-067628084-5

insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is

MICHIGAN
73225 (02-01)
Page 10 of 16
TO BE RECORDED

LIBER33280 PG426

03-2335-067628084-5

less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgement, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any Successor in Interest to Borrower and Lender. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by

MICHIGAN
73225 (02-01)

Page 11 of 16

TO BE RECORDED

## LIBER 33280 PG427

03-2335-067628084-5

Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request of Borrower, any Successor in interest to Borrower or any agent of Borrower. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the

LIBER 33280 PG 428

03-2335-067628084-5

conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgement enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument,

LIBER33280 PG429

03-2335-067628084-5

and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substance in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MICHIGAN
73228 (02-01)

Page 14 of 16

TO BE RECORDED

LIBER 33280 PG 430

03-2335-067628084-5

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court Shall be paid to Lender on post-petition arrears.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is not prohibited by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

WITNESS

X_____
                    WITNESS

X_____
                    WITNESS

X_____
                    WITNESS

MICHIGAN
73226 (02-01)                    Page 15 of 16                    TO BE RECORDED

LIBER 33280 PG 431

03-2335-067628084-5

x _David Billy_
DAVID BILLY

_Rhondia E. Billy_
RHONDIA E. BILLY

──────── (Space Below This Line For Acknowledgment) ────────

STATE OF MICHIGAN )
)SS.
County _Oakland_ )

The foregoing instrument was acknowledged before me this _20th_ day of _April 2004_
(date)
by _David Billy and Rhonda E. Billy husband + wife_
(person acknowledging)
My Commission expires: _12-16-06_
_Wayne Oakland_ County, Michigan

_Notary Public_

MALCOM DEATON
Notary Public, Wayne County, MI
Acting in _Oakland_ Co., MI
My Commission Expires 12/16/2006

Prepared By:
KARLEE MESLER
Information Coordinator
39555 ORCHARD HILL PL STE 300
NOVI, MI 48375

MICHIGAN
73225 (03-01)                    Page 16 of 16                    TO BE RECORDED

LIBER33280 PG432

**ADJUSTABLE RATE RIDER**
(12-MTA Index - Payment and Rate Caps)

03-2335-067628084-5

THIS ADJUSTABLE RATE RIDER is made this ___20th___ day of __April, 2004_____,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
_____Washington Mutual Bank, FA_____ (the "Lender") of the same date and
covering the property described in the Security Instrument and located at:

_____30780 TURTLE CREEK, FARMINGTON HILLS, MI 48331_____
(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL
HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY
BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE
THAN ___125%___ OF THE ORIGINAL AMOUNT (OR $ ___520,000.00___ ).
MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND
RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid.
Up until the first day of the calendar month that immediately precedes the first payment due date
set forth in Section 3 of the Note, I will pay interest at a yearly rate of ___4.129°___ %. Thereafter
until the first Change Date (as defined in Section 4 of the Note) I will pay interest at a yearly rate
of ___1.250___ %. The interest rate I will pay will thereafter change in accordance with Section 4
of the Note.
Section 4 of the Note provides for changes in the interest rate and monthly payment as
follows:

32843 (11-01)                           Page 1 of 5                    TO BE RECORDED

DB        N 2 6

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

LIBER 33280 PG 433

03-2335-067628084-5

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the ____1st____ day of ____June, 2004____, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Interest Rate Change**

Before each Change Date, the Note Holder will calculate my new interest rate by adding ____Two & Nine-Tenths____ percentage points _2.900_ % ("Margin") to Current Index. The Note Holder will then round the result of this addition to the nearest one thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three-year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). The difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than _9.950_ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing ____June 1, 2005____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the

32643 (11-01)    *D B*    Page 2 of 5    TO BE RECORDED

Received for Filing Oakland County Clerk 2012 JUL 10 PM 02:48

LIBER 33280 PG434

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

03-2335-067628084-5

amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

(F) *Monthly Payment Limitations*

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

(G) *Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization*

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

(H) *Limit on My Unpaid Principal; Increased Monthly Payment*

My unpaid Principal can never exceed a maximum amount equal to __125%__ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that __125%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

(I) *Required Full Monthly Payment*

On the __FIFTH__ anniversary of the due date of the first monthly payment, and on that same day every __FIFTH__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

(J) *Notice of Changes*

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

32843 (11-01)                                    Page 3 of 5                                    TO BE RECORDED

$\mathcal{DB}$

LIBER 33280 PG 435

03-2335-067628084-5

monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

(K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement , the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the

32843 (11-01)                  Page 4 of 5                  TO BE RECORDED

LIBER33280 PG436

03-2335-067628084-5

transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

x _____
DAVID BILLY

_____
RHonda E. Billy

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

LIBER42149 PG775

113539
LIBER 42149 PAGE  775
$13.00 MISC RECORDING
$4.00 REMONUMENTATION
06/17/2010 03:32:56 P.M.  RECEIPT# 45210

PAID    RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

### ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that JPMorgan Chase Bank, N.A., successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, FA , 7757 Bayberry Road, Jacksonville, FL 322560, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, to it paid by DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR WAMU MORTGAGE PASS THROUGH CERTIFICATES, WAMU 2004-AR8, 7757 Bayberry Rd. Jacksonville, FL 32256 its successors and assigns, party of the second part, the receipt whereof is hereby acknowledged, has sold, assigned and transferred and does hereby sell, assign and transfer to the said party of the second part, all the right, title and interest of the said party of the first part in and to a certain real estate mortgage dated April 20, 2004, made by David Billy Sr. and Rhondia E. Billy, husband and wife, to JPMorgan Chase Bank, N.A., successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual in the amount of $416,000.00 and recorded on June 11, 2004 in Oakland County Register of Deeds office in Liber 33280, Page 416, described as follows, to wit:

Lot 64, Ramblewood Number 2, according to the recorded plat thereof as recorded in Liber 149, Pages 25 and 26 of Plats, Oakland County Records.
Tax ID # 23-05-151-001

149025

Commonly known as: 30780 Turtle Creek

together with the note to which the same is collateral;

Effective Date: On or before May 8, 2010

IN WITNESS WHEREOF of said party of the first part has caused these presents to be signed by its _____Vice President_____ for JPMorgan Chase Bank, N.A., successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, FA and its corporate seal to be hereunto affixed this _8_ day of __June_____, A.D., 2010.

JPMorgan Chase Bank, N.A., successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, FA

BY: _____

Its: _____
Vice President
Margaret Dalton

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

@ TITLE
P O Box 5041
Troy, MI 48007-5041

2010 JUN 17 PM 12:36
RECEIVED
OAKLAND COUNTY
REGISTER OF DEEDS

OK - MH

LIBER 4 2 1 4 9 PG 7 7 6

STATE OF   Florida          )
                            )  ss.
COUNTY OF  Duval            )

On this  8  day of  June          , 2010, before me appeared
____Margaret Dalton____ to me personally known, who being by me duly sworn, did each for
her/himself say that they are respectively the ___Vice President___ for JPMorgan Chase Bank, N.A.,
successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual
Bank, FA and which executed the within instrument, and that the seal affixed to the said instrument is the
corporate seal of the corporation named in and which executed the within instrument.

                                        Rose Hunter Notary Public
                                        Duval          County
                                        My Commission Expires:_____

Drafted by and when recorded return to:
Marshall R. Isaacs
Attorney at Law
Orlans Associates PC                              Orlans File No. 362.7803
P.O. Box 5041
Troy, MI 48007

                                        Recording Fee: $



ROSE HUNTER
Notary Public - State of Florida
My Comm. Expires Feb 1, 2013
Commission # DD 856913

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

# Exhibit 3

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48



RECEIVED
OAKLAND COUNTY
REGISTER OF DEEDS

2010 JUL 27  AM 9:21

## SHERIFF'S DEED ON MORTGAGE FORECLOSURE

Roger St Jean

THIS INDENTURE made the July 20, 2010 between Roger St Jean, a deputy sheriff in and for Oakland County, Michigan, party of the first part, and Deutsche Bank National Trust Company as Trustee for WAMU Mortgage Pass Through Certificates, WAMU 2004-AR8, 7255 Baymeadows Way, MailStop: Jaxa 2035, Jacksonville, FL, 32256, party of the second part thereinafter called the grantee).

Witnesseth, that whereas, David Billy Sr. and Rhondia E. Billy, husband and wife, whose address is 30780 Turtle Creek, Farmington Hills, MI 48331, made a certain mortgage to JPMorgan Chase Bank, N.A., successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, FA, a federal association (hereinafter called "Mortgagee"), which was duly recorded in the office of the Register of Deeds of Oakland County in Liber 33280, Page 416, Oakland County Records. Said mortgage is now held by Deutsche Bank National Trust Company as Trustee for WAMU Mortgage Pass Through Certificates, WAMU 2004-AR8 by assignment.

WHEREAS, said mortgage contained a power of sale which has become operative by reason of default in the terms and conditions of the mortgage; and

WHEREAS, no suit or proceeding at law or in equity has been instituted to recover the debt secured by the mortgage or any part thereof; and

WHEREAS, by virtue of the power of sale, and pursuant to the statutes of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in the mortgage that the premises, or some part of them, would be sold on the 20th day of July, 2010, at the public vendue, on the 1st floor Main entrance to the Courthouse in Pontiac, that being the place of holding the Circuit Court for Oakland County wherein the premises are located; and

WHEREAS, pursuant to said notice I did, at 10:00 a.m., local time, on the date stated above, expose for sale at public vendue the said lands and tenements described below, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of Four Hundred Sixty Thousand Six Hundred Thirty-One & 9/100 Dollars ($460,631.09), that being the highest bid therefore and the grantee being the highest bidder; and

WHEREAS, said lands and tenements are situated in the City of Farmington Hills, Oakland County, Michigan, and are more particularly described as:

Lot 64, Ramblewood Number 2, according to the recorded plat thereof as recorded in Liber 149, Pages 25 and 26 of Plats, Oakland County Records.

Tax#:23-05-151-011
More commonly known as 30780 Turtle Creek

Now, this indenture Witnesseth, that I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statute in such case made and provided, and in consideration of the sum of money so paid as aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey, bargain, and sell unto the grantee, its successors and assigns, FOREVER, all the estate, right, title, and interest which the said Mortgagor(s) had in said land and tenements and every part thereof, on 20th day of April, 2004, that being the date of said mortgage, or any time thereafter, to have and to hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole and only use, benefit and behoove forever, as fully and absolutely as I, the Deputy Sheriff aforesaid, under the authority aforesaid, might, could, or ought to sell the same.

In witness whereof I have set my hand and seal.

Roger St Jean

Deputy Sheriff in and for the County of Oakland, Michigan

State of Michigan
County of Oakland

This Sheriff's Deed on Mortgage Sale was acknowledged before me this July 20, 2010, by Roger St Jean, Deputy Sheriff for Oakland County, Michigan.

_____, Notary Public
Name
Oakland County, Michigan
My Commission Expires: _____
Acting in _____ County

County Revenue Required.
Exempt from State Real Estate Transfer Tax
pursuant to MCLA 207.526(v)

Blair A Finney- Notary Public
State of Michigan, County of Oakland
My Commission expires 4/6/2017
Acting in the county of Oakland

File Number: 362.7803  Loan Type: CONV

O.K - GK

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

NON-MILITARY AFFIDAVIT
State of Michigan
                                ss.
County of Oakland

The undersigned, being first duly sworn, states that upon investigation she/he is informed and believes that none of the persons named in the notice attached to the sheriff's deed of mortgage foreclosure, nor any person upon whom they or any of them were dependent, were in the military service of the United States at the time of sale or for six months prior thereto; nor the present grantee(s).

The undersigned further states that this affidavit is made for the purpose of preserving a record and clearing title by virtue of The Servicemembers Civil Relief Act of 2003, as amended.

Tara Cao

Subscribed and sworn to before me this 15th day of July, 2010.

Andrew A. Collins, Notary Public
Oakland County Acting in Oakland County, Michigan
My Commission Expires:  9/5/2016

AFFIDAVIT OF AUCTIONEER and CERTIFICATE OF REDEMPTION PERIOD
State of Michigan
                                ss.
County of Oakland

Roger St Jean          being first duly sworn, deposes and says that he is a Deputy Sheriff of said Oakland County; that he/she acted as Auctioneer, and made the sale as described in the annexed Deed pursuant to the annexed printed notice; that said sale was opened at 10:00 a.m., local time, on the 20th day of July, 2010; public vendue, on the 1st floor Main entrance to the Courthouse in Pontiac, that being the place of holding the Circuit Court for Oakland County, and said sale was kept open for the space of one hour; that the highest bid for the lands and tenements therein described was Four Hundred Sixty Thousand Six Hundred Thirty-One & 9/100 Dollars ($460,631.09); made by Deutsche Bank National Trust Company as Trustee for WAMU Mortgage Pass Through Certificates, WAMU 2004-AR8, that said sale was in all respects open and fair; and that he/she did strike off and sell said lands and tenements to said bidders, which purchased the said lands and tenements fairly, and in good faith, as deponent verily believes.

I DO HEREBY CERTIFY that the within Sheriff's Deed will become operative at the expiration of the redemption period, January 20, 2011, unless said date falls on a weekend, at which point the redeeming party or anyone claiming under him, will have until 5:00pm the following Monday to perfect their redemption; OR the property is determined abandoned pursuant to MCLA 600.3241a, in which case the redemption period will be 30 days from the date of sale, OR should the Sheriff's Deed not be recorded within 20 days from the date of the foreclosure sale, in which case the redemption period will be 6 months from the date of recording.  The foreclosing mortgagee can rescind the sale in the event a 3rd party buys the property and there is a simultaneous resolution with the borrower.

Roger St Jean
                Deputy Sheriff
Oakland County, Michigan

Subscribed and sworn to before me this 20th day of July, 2010.

_____ Notary Public
                Name
Oakland County, Michigan
My commission expires: _____

Blair A Finney- Notary Public
State of Michigan, County of Oakland
My Commission expires 4/6/2017
Acting in the county of Oakland

Drafted by and when recorded return to:
Caleb J. Shureb
Orlans Associates, P.C.
P.O. Box 5041
Troy, MI 48007-5041
(248) 502-1400     File No: 362.7803

ATTN REGISTER OF DEEDS:  Please send all Redemption notifications and funds collected in your office to Orlans Associates, P.C., P.O. Box 5041, Troy, MI 48007-5041.

ATTN PURCHASERS:  This sale may be rescinded by the foreclosing mortgagee.  In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at sale, plus interest.  Please be advised that all 3rd party bidders are responsible for preparing and recording the Sheriff's Deed.  ORLANS ASSOCIATES, P.C. Hereby expressly disclaims all liability relating to the foreclosure, preparation and recording of the Sheriff's Deed.

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY DUTY. MORTGAGE SALE - Default has been made in the conditions of a mortgage made by David Billy Sr. and Rhonda E. Billy, husband and wife, to Washington Mutual Bank, FA, a federal association, Mortgagee, dated April 20, 2004 and recorded June 11, 2004 in Liber 33280, Page 418, Oakland County Records, Michigan. Said mortgage is now held by Deutsche Bank National Trust Company as Trustee for WAMU Mortgage Pass Through Certificates, WAMU 2004-AR9 by assignment. There is claimed to be due at the date hereof the sum of Four Hundred Fifty-Seven Thousand Seven Hundred Twenty-Three and 56/100 Dollars ($457,723.56) including interest at 3.632% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue at the 1st floor Main entrance to the Court House in Pontiac in Oakland County, Michigan at 10:00 a.m. on JULY 20, 2010. Said premises are located in the City of Farmington Hills, Oakland County, Michigan, and are described as: Lot 64, Ramblewood Number 2, according to the recorded plat thereof as recorded in Liber 149, Pages 25 and 26 of Plats, Oakland County Records. The redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCLA 600.3241a, in which case the redemption period shall be 30 days from the date of such sale. TO ALL PURCHASERS: The foreclosing mortgagee can rescind the sale. In that event, your damages, if any, are limited solely to the return of the bid amount tendered at sale, plus interest. If you are a tenant in the property, please contact our office as you may have certain rights. Dated: June 16, 2010 Orlans Associates, P.C. Attorneys for Servicer P.O. Box 5041 Troy, MI 48007-5041 File No. 362.7803 ASAP# 3617477 06/18/2010, 06/25/2010, 07/02/2010, 07/09/2010

**AFFIDAVIT OF POSTING**

STATE OF MICHIGAN

COUNTY OF Oakland

I, _Yao Ren_, being duly sworn, deposes and says that on the _23_ day of _June_ A.D., 2010, he posted a Notice, a true copy of which is annexed hereto, in a conspicuous place upon the premises described in said notice by attaching the same in a secure manner to:

30780 TURTLE CREEK
FARMINGTON HILLS MI 48331

_Yao Ren_
**Signature**

_Yao Ren_
**Printed Name (Please Print Neatly)**

*Agent, please mark the below, when applicable:*

☐ Multi Unit
☐ Mobile/Manufactured Home
☐ Vacant/Abandonment
☐ No Dwelling
☒ Other (i.e. visual damage) _Gated/guarded entrance_

_Homeowner picked up posting @ gate. Guard called home owner who refused to let us post. Residence itself._

Subscribed and sworn to before me this _24_ day of _June_, A.D. 2010

_Diane M Spirk_
Signature of Notary Public

_Diane M Spirk_
Printed Name of Notary Public
(Please Print Neatly)

_Wattens_ County, Michigan

My Commission Expires: _11 Jul al_

Acting in _Wattens_ County, Michigan

DRAFTED By and when recorded

Return to: **Orlans & Associates, P.C.**

P.O. Box 5041
Troy, MI 48007
(248)502-1400

File No. _3627803_
ASAP No. _3617477_

Received for Filing Oakland County Clerk 2012 JUL 19 PM 02:48

STATE OF MICHIGAN,} ss.
County of Oakland)

Crystal Hill _____ being duly sworn,

deposes and says that I am the legal rep _____ of
THE OAKLAND PRESS, a newspaper printed and circulated
daily in Oakland County, Michigan and that I held such
position during the publication of the notice hereto annexed;
that a notice of _____

public notice _____
which the annexed notice is a true copy, was published in the
said THE OAKLAND PRESS _____

_____ immediately preceding the
16 of May, that the annexed printed copy of said notice
was taken from the said newspaper. That the dates of
publication of said notice were _____

May 15, 2012
and further deponent sayeth not.

[signature] Crystal Hill
Crystal Hill

Subscribed and sworn to before me this _____ 19 _____ day of
May _____ A.D. 20, 12

[signature] T. McKim
T. McKim

NOTARY PUBLIC, OAKLAND COUNTY, MICHIGAN

T H A I T. McKIM
NOTARY PUBLIC, STATE OF MI
COUNTY OF LAPEER
ACTING IN COUNTY OF
MY COMMISSION EXPIRES Dec 30, 2014
Oakland